# MICHAEL L. SOSHNICK
*Attorney at Law*
190 WILLIS AVENUE
SUITE 112
MINEOLA, NEW YORK 11501

MICHAEL L. SOSHNICK

OF COUNSEL
JOHN LAWRENCE

TEL (516) 294-1111
FAX (516) 294-5465

April 7, 2014

<u>Via ECF</u>

Honorable Marianne O. Battani
United States District Judge
Eastern District of Michigan
Theodore Levin Building
231 W. Lafayette Blvd.
Detroit, MI 48226

Re: *United States v. Adam Paul Savader*
Docket No.: 0645 2:13CR20522-1

Dear Judge Battani:

  The Defendant respectfully submits this memorandum in connection with his upcoming sentencing proceeding, which is currently scheduled for April 23, 2014. Pursuant to the plea agreement upon which Adam Paul Savader entered his guilty plea before this Court on November 14, 2013, a sentence of time already served with a period of supervised release of at least one but not more than three years together with any reasonable treatment modality recommended by the Department of Probation is hereby recommended. Should the Court believe that additional jail time is warranted, community service is respectfully recommended as an alternative.

  The first and second counts of the above-referenced Information to which the Defendant pled guilty charged Cyber Stalking, in violation of 18 U.S.C. 2261A(2)(A) and Internet Extortion, in violation of 18 U.S.C. 875(d). It should be noted that all times relevant to the commission of these offenses, Adam was under twenty-one (21) years of age and had no prior criminal history of any kind or nature whatsoever. However, Adam has had a significant psychiatric history which is addressed in great detail in the annexed reports of Dr. Barbara R. Kirwin, Ph.D. and Dr. Raymond Behr, M.D., P.C.

  Although the conduct alleged in the Information occurred during an approximate three and one-half (3 1/2) month period between the end of September, 2012, through the middle of January, 2013, Adam was not arrested until April 23, 2013 in his home in Long

Island, New York where he resides together with his parents, younger sister, Jillian, and his dog, Shayna.

Adam was brought before Eastern District of New York Magistrate Judge Arlene Lindsay on April 23, 2013, and he immediately waived extradition, notwithstanding a detention order resulting in Adam being remanded to the Nassau County Jail. Following another appearance before Magistrate Judge Gary Brown on April 26, 2013, Adam was transferred to the Metropolitan Detention Center in Brooklyn, New York.

Subsequently, Adam was transferred in custody to a federal facility in Oklahoma, where he remained until May 21, 2013 when he was produced in the Eastern District of Michigan before Magistrate Judge Laurie J. Michelson, who continued Adam's detention at the Wayne County Jail pending the arrival of retained counsel in Detroit. On May 24, 2013, when the undersigned counsel appeared before Magistrate Judge Laurie J. Michelson, Adam was released on a $10,000.00 unsecured bond; ordered to wear an ankle bracelet; and comply with conditions of pre-trial release.

It should be noted that prior to Adam's release from custody, he agreed to speak with special agents of the FBI in order to provide them with information concerning where the stored images that he had improperly obtained could be retrieved. Adam's purpose in providing this information was to give peace of mind to the victims and their families. Adam wanted to assure all concerned that none of the images that he improperly obtained would ever be released to any third party.

The impact of being incarcerated in four (4) different jails, two of which were federal and two of which were county facilities, for a period of thirty-one (31) days upon this twenty- one (21) year old young man who had never previously seen the inside of a jail cell cannot be emphasized enough. It was a harrowing experience, the likes of which Adam had never imagined, and hopes never to endure again.

It should also be noted that prior to entering into the plea agreement in this case, Adam agreed to sit down with government prosecutors in order to explain how he engaged in his misconduct. Adam's purpose was to fully accept responsibility for his wrongdoing and to inform the government of his methods and means in accessing the images of his victims in order to make it more difficult for anyone else, so inclined, to do so in the future. He was completely candid with the prosecutors; answered all of their questions; made suggestions to strengthen computer security measures; and expressed sincere remorse.

In the nearly eleven (11) months since Adam was released from the Wayne County Jail, Adam has been compliant with his bail conditions and has made a good adjustment to pre-trial release. Moreover, he has cooperated with the government, and he has accepted full responsibility for his errant conduct.

As the Court is aware, the holding in United States v. Booker, 125 S.Ct 738 (2005) established the controlling principle that the Federal Sentencing Guidelines are

not binding but rather merely advisory. The sentencing court is under a duty to consider the guidelines in conjunction with the factors set forth in 18 USC 3553(a) and then proceed to determine whether to impose a "non-guidelines sentence" (see, United States v. Crosby, 397 F. 3d 103 (2nd Cir 2005). Reasonableness serves as the standard in connection with appellate review (see, United States v. Howard, 454 F. 3d 700, noting that traditional guideline departures have been rendered obsolete in the post-Booker world).

It is contended that deference to the guidelines cannot serve to negate or preempt this Court's unique ability to sentence a defendant in a manner that is consistent with what would best serve the ends of justice. In addition, the sentencing court occupies a superior position to find facts relevant to sentencing and to appreciate their importance and relevancy pursuant to Section 3553 (a).

The following criteria, provided for in 18 U.S.C. Section 3553 (a), must be considered to insure the imposition of a sentence sufficient, **but not greater than necessary**, to comply with paragraph 2 of the stated subsection:

- A) the nature and circumstances of the offenses and the history and characteristics of the defendant;
- 2) the need for the sentence to be imposed;
- A) to reflect the seriousness of the offense; to promote respect for the law; and to provide just punishment for the offense;
- B) to afford adequate deterrence to criminal conduct;
- C) to protect the public from further crimes of the defendant;
- D) to provide defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner;
- 3) the kinds of sentences available;
- 4) the kinds of sentences and the sentencing range established for;
- A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
- 5) any pertinent policy statement (issued by the Sentencing Commission): the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct and;
- 6) the need to provide restitution to any victims of the offense.

The Court's attention is invited to Adam's immediate willingness to accept responsibility for his misconduct and cooperate with the government's request to speak with special agents of the FBI upon the initial appearance of the undersigned counsel in this district.

It cannot be emphasized enough that this is Adam's first encounter with the criminal justice system. Therefore, no criminal history points are applicable. Accordingly, it is undisputed that Adam is a criminal history category 1 offender. The multitude of letters that are being submitted herewith evidence Adam's strong family and community ties.

Although it is not my intention to minimize the severity of my client's criminal conduct, I respectfully submit that he has made amends for his wrongdoing. I verily believe that there is no risk of my client re-offending inasmuch as he has become a much more responsible, mature and spiritual person as a result of the ordeal he has shouldered since his arrest in April, 2013.

I ask the Court to take into consideration the fact that the only demands that Adam made were for the victims to "friend" him on facebook; text with him; and to send more photos. Additionally, it must be emphasized that Adam never released a single image of anyone to a third party. In truth, and in fact, the account that held the compromising images was password secured in order to prevent anyone other than the specific individual depicted in the photos from gaining access to them.

Accordingly, it is respectfully submitted that a sentence of additional incarceration is not required to protect the public from any possible further crimes of the Defendant. Moreover, Adam is in need of medical assistance that was not adequately provided for him during his month long incarceration. Based upon information and belief, the medical assistance and medication that he requires could best be provided during a post-release supervision regimen.

Adam stands convicted of internet extortion, an "E" felony, carrying no mandatory minimum period of incarceration and a maximum of two years incarceration and cyber stalking, a "D" felony carrying no mandatory minimum period of incarceration and a maximum of five years incarceration. In light of the wide range of sentencing alternatives, including incarceration; one (1) to five (5) years probation with community service; and time already served with post-release supervision of one (1) to three (3) years, this Court has virtually unfettered discretion to impose a sentence that provides for Adam's rehabilitative potential as well as the interest of justice.

To say that the felony convictions and the past year of incarceration; home confinement; reporting to pre-trial service probation officers; and making several appearances in the Eastern Districts of New York and Michigan for mandatory court dates has been a punishment sufficient to comply with the necessity of imposing a sentence required by paragraph 2 of 18 U.S.C. 3553 would not be an overstatement. The enormity of Adam's suffering cannot be emphasized enough. Nevertheless with increases and various changes in his medication regimen, Adam has overcome several bouts with suicidal ideation. My concern and the concern of his parents and the mental health professionals in this case is that additional incarceration would be **a punishment greater than necessary** and could tip Adam to a state of utter despair and hopelessness. Such a sentence would not serve the ends of justice.

If Adam's sentence goes forward as currently scheduled, he would have already effectively served a sentence of a year and a day, to wit: April 23, 2013 (date of arrest) to April 23, 2014 (date of sentence). As this Court knows, Adam served a month and a day of incarceration at four (4) different jails in three (3) different states followed by eleven

(11) months of home confinement with limited exceptions for attorney visits; therapy sessions; religious observance; and community service.

Furthermore, it does not appear from the record that restitution is applicable in this case. To date, no one has requested restitution. It should also be noted that Adam has a history of community service at the a local soup kitchen on Long Island; Sid Jacobson Youth Center; and Congregation Beth Sholom Chabbad of Mineola. In view of this history, it is respectfully suggested that if this Court is contemplating additional jail time that consideration should be given to community service, as an alternative, which could be a special condition of post-release supervision. I truly believe that it is time for the healing process to begin, and to focus on treatment and rehabilitation, instead of more incarceration which would only serve to reduce this young man to a state of utter despair and hopelessness.

## CONCLUSION

In view of the compendium of information submitted to the Court by the undersigned counsel and those who have taken time to write letters on behalf of the Defendant, I ask the Court to impose a sentence that truly serves the interests of justice and promotes the strong public policy in favor of encouraging government assistance and acceptance of responsibility and provides for the special needs of this Defendant. I respectfully submit that such sentence would be the period of time Adam has already served in four different jails together with a period of supervised release of at least one but not more than three years together with any reasonable treatment modality recommended by the Department of Probation. Finally, if the Court is contemplating additional jail time, a period of community service as a condition of post release supervision is recommended as an alternative.

Thank you for your consideration.

Respectfully submitted,

Michael L. Soshnick

MLS/kb
Enc.